**Attorneys and Counselors at Law**
**2285 Whitney Avenue**
**Hamden, CT 06518**

Miles N. Esty[1]
Elizabeth M. Buckmir
Christine M. Baptiste
Maureen E. Burns
David J. Crotta, Jr.
Michael C. Deakin
James M. Hyland[1]
Anthony R. Zucaro

Telephone (203) 248-5678
Facsimile  (203) 288-9974
Mesty@estyandbuckmir.com
[1] Admitted in New York

January 21, 2026

The Honorable S. Dave Vatti
United States Magistrate Judge, District of Connecticut
915 Lafayette Boulevard, Bridgeport, CT 06604

### Re:   **Nancy Labroad v. Costco Wholesale Corp., et al** – 3:24-CV-01102-KAD

Dear Honorable Magistrate Vatti:

The defendant Costco Wholesale Corporation ("Costco") hereby files this reply to plaintiff's letter brief dated January 16, 2026. The issue pending before the Court is a very narrow one. Namely, under Federal R. Civ. Proc. 30(b)(6), is Costco obligated to produce a corporate designee on two very specific and narrowly defined topics when the topics request information that does not exist and, therefore, there are no individuals knowledgeable about the subject topics.

### THE TOPICS

Plaintiff argues that she is "entitled to depose a representative who can testify regarding the corporation's position and knowledge, if any, regarding pedestrian safety and risk mitigation in projects and ongoing operation of the defendant's locations." See plaintiff's letter brief dated January 16, 2026, pgs. 4-5.

This is not accurate.

Pursuant to the Court's Order dated October 23, 2025, the current issue is limited to two topic areas.

**TOPIC 1 -** training, education, instructions and guidelines provided by Costco Wholesale to its managers concerning traffic safety, traffic warnings, and traffic patterns in Costco Wholesale parking lots during the period of June 17, 2017 to June 22, 2022, which were applicable to Warehouses in District 2 of the Northeast region.

First, Topic 1 is expressly limited to training, education, instructions, and guidelines provided by Costco to its managers. Costco did not provide training and information to its managers in District 2 during this time period. Indeed, plaintiff's counsel is aware of this because he deposed Todd Cunningham, Warehouse Manager for the Enfield Warehouse during this time period.  Mr. Cunningham's testimony confirmed the following:

- Mr. Cunningham testified that Costco never contacted him prior to the subject incident regarding concerns over pedestrian or vehicle safety. See deposition of Todd Cunningham, Exhibit A, pg. 48.
- Mr. Cunningham did not review any written material before placing safety cones in the parking lot prior to the incident. Exhibit A, pg. 76.
- Costco has no written materials regarding the placement of signs in the parking lot. Exhibit A, pg. 76.
- It was Mr. Cunningham's decision to place traffic cones and traffic signs and he did not receive any input from any superior at Costco. Exhibit A, pgs. 32–33.
- Mr. Cunningham had no knowledge of the 2022 ADA upgrades to the parking lot prior to the work being performed. Exhibit A, pg. 82.

Finally, it should be noted that Mr. Cunningham testified that he has no knowledge whatsoever regarding the standards that Costco corporate looks at or reviews prior to making any changes to a parking lot. Id, pg. 82. It should be noted that on August 18, 2025 Jason Lisee, the Assistant General Manager of the Enfield Warehouse, testified and his testimony tracked Mr. Cunningham's testimony. He testified that assistant general managers did not receive any training regarding safety in the exterior areas. See Exhibit B, pg. 15.

Second, plaintiff's counsel cites QBE Insurance v. Jorda Enterprises, Inc., 277 F.R.D. 676 (688) (2012) to support her claim that Costco must produce an individual on a topic that it has no knowledge. However, plaintiff's letter brief omits the QBE Court's express holding to the contrary.

"If a corporation genuinely cannot provide an appropriate designee because it does not have the information, cannot reasonably obtain it from other sources and still lacks sufficient knowledge after reviewing all available information, then its obligations under the Rule cease. Id. Citing Calzaturficio, 201 F.R.D. at 39; see also Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 76 (D.Neb.1995)." Cited in Klorczyk v. Sears Roebuck, Civ. No. 3:13CV257 (JAM)(D.Conn) (2015).

The decision in Dravo v. Liberty Mutual is widely accepted. In Tiemann v. Yeres, A-18-CV-301-LY (W.D. Tex. 2019) the court confirmed the universal acceptance of the court's holding in Dravo. "Thus, at the end of the day, most courts agree with Magistrate Judge Piester's statement in the Dravo case: "If [the corporation] does not possess such knowledge as to so prepare [the witness] or another designate, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to 'matters known or reasonably available to the organization.'" Tiemann v. Yeres, A-18-CV-301-LY (W.D. Tex. Feb 22, 2019 citing Dravo, supra.

See also, Jenkins v. XpresSpa Grp., Civ. No. 19 Civ. 1774 (VEC) (SLC) (S.D.N.Y. 2020) (corporation has no obligation to produce designee because 30(b)(6) requires testimony only as to 'matters known or reasonably available to the organization).'" Bigsby v. Barclays Capital Real Estate, Inc., 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (quoting Dravo, supra).

Here, the plaintiff is specifically seeking to depose a designee regarding information that does not exist. Since the defendant is only obligated to designate an individual who can testify as to matters that are known or reasonably available to the organization, Costco is not obligated to produce a designee on this topic.

**TOPIC 2 -** corporate policies, procedures, guidelines and instructions regarding pedestrian safety and risk mitigation in Costco Wholesale parking lots, parking areas and exterior walkways for the period June 17, 2017 to June 22, 2022, which were applicable to District 2 of the Northeast region.

As with Topic 1, there are no policies, procedures, guidelines, and instructions regarding pedestrian safety and risk mitigation for the time period of June 17, 2017 to June 22, 2022 applicable to District 2. As a result, Costco is not obligated to produce a designee on this topic.

Plaintiff makes two arguments in support of her position. Both are without merit.

First, plaintiff cites to the deposition of Bill Stanfield taken on December 8, 2025 and his discussion of the predesign. However, Mr. Stanfield's testimony did not establish that there are any Costco employees knowledgeable regarding either Topic 1 or Topic 2. First, he specifically stated that communication regarding predesign depends on "what is being built". See deposition transcript of Bill Stanfield, Exhibit C, pg. 28. There was absolutely no testimony whatsoever given by Mr. Stanfield that there are policies, procedures, guidelines, and instructions applicable to pedestrian safety. In fact, plaintiff's brief omits the following exchange in which Mr. Stanfield directly contradicts plaintiff's position.

**Q.** "In terms of the work that was to be performed at the Enfield Warehouse in 2022. It's your understanding that the work was motivated by work done by the architect as well as input from operations?"

**A.** "No. I — I would have — it's a collaboration as I understand it between MG2, Costco legal and Bowler engineering with some influence by the city who had to permit it."

See deposition transcript of Bill Stanfield, Exhibit C, pg. 81.

Mr. Stanfield then described the 2022 Enfield Warehouse ADA project as a typical project that would have involved the contractor with "limited involvement of operations strictly for just knowing they're there and getting them off the lot so they could open in the morning. If they had any real concerns, they would have called MG2 or myself". Exhibit C, pg. 86.

Second, plaintiff refers to the project manual for the ADA upgrades that occurred in 2022 as well as a document titled "Costco Development Requirements". Again, these documents do not support plaintiff's claim that there are individuals knowledgeable regarding the limited areas defined in Topics 1 and 2.

It is important to note that the Court, in ruling on the defendant's objections to production requests, previously ordered Costco to produce all documents relating to the construction of the parking lot at the Enfield Warehouse. In an effort to provide complete and full disclosure, the defendant produced the document entitled Costco Development Requirements. However, this document by its own express terms applies only to the development of a Warehouse. Specifically, in the introduction to the document it states the "Costco Development Requirements defines the minimum standards for site investigations, and development requirements for Costco Wholesale Warehouses". The Enfield Warehouse was constructed in 1993. This document does not support the proposition that there are individuals knowledgeable concerning guidelines, documents, instructions or training regarding safety or risk mitigation in parking lots from 2017 to 2022 in District 2.

The Federal Rules support Costco's position. Fed. R. Civ. P. 1 states, "These rules govern the procedure in all civil actions and proceedings in the United States district courts …. They should be construed, administered, and employed by the court and the parties to secure *the just, speedy, and inexpensive determination of every action and proceeding. (*Emphasis added.)

In addition, Rule 26(b), as amended, provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," but adds another threshold consideration – the information must also be "proportional to the needs of the case." (Fed. R. Civ. P. 26(b)(1) (2016). In this matter, the accident is actually on video, which the defendant has produced. In addition, Costco has produced thousands of pages of documents, building plans, drawings, and correspondence relating to design, construction and operation of the Enfield Warehouse and documents and information relating to incidents at 17 other Warehouses. Finally, plaintiff has already deposed three Costco employees. Despite the foregoing, plaintiff is now seeking additional depositions to question additional designees about information that does not exist.

When read in tandem, Rule 1 and Rule 26(b)(1) dictate the application of reasonableness and proportionality to the discovery process. Based on the foregoing, the defendant should not be required to produce a designee to testify as to matters that do not exist.

Sincerely,

Attachments                                     Miles N. Esty, counsel for Costco

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


CIVIL ACTION NO: 3:24-cv-01102

_____x

NANCY LABROAD,

                              Plaintiff

               -vs-

COSTCO WHOLESALE CORP.

COSTCO WHOLESALE MEMBERSHIP, INC.,

                              Defendants

_____x

          Deposition of TODD CUNNINGHAM, Corporate

Designee of Costco Wholesale Corp., in the

hereinbefore-entitled action, taken by the

Plaintiff, pursuant to Notice before Michelle A.

Howell, a duly qualified Notary Public in and for

the State of Connecticut.  This deposition is being

held remotely on August 18, 2025, commencing at

12:43 p.m.


                    DEL VECCHIO REPORTING

     STAMFORD          NEW HAVEN          HARTFORD

                    (203) 245-9583

1    into that in a few moments but at some point you

2    believe an A frame board and cones were used to

3    direct traffic traveling along the area that's

4    drawn as one down row six?

5        A.  Right.  Correct.

6        Q.  And so then that would mean that you would

7    not be permitted with that configuration to

8    continue past row six, turn right down row seven?

9        A.  That's correct.

10        Q.  And I take it from your answer you're not

11    sure when that occurred?

12        A.  I don't remember when we exactly started

13    that, no.

14        Q.  Do you know why that was started?

15        A.  To alleviate traffic right in front of the

16    sliders.  We had quite a few people, you know,

17    stopping, dropping people off, trying to load their

18    vehicles.

19        Q.  All right.  And when you say it's the area

20    right in front of the sliders, it's my

21    understanding that the sliders are roughly located

22    in the area with these two crosswalks leading to

23    lanes four, five and six, correct?

24        A.  That's correct.

25        Q.  And the cones and the traffic board were

Page 33

1    installed to alleviate congestion in that area?

2    A.  Yes.

3    Q.  And whose decision was it to place -- let me

4    withdraw the question.

5        Whose decision was it to divert traffic

6    using the A frame board?

7    A.  Mine.

8    Q.  And did you consult with anyone superior to

9    you at Costco regarding that decision at any point?

10   A.  Prior to putting it up, no.  I believe it

11   was Scott Riekers when I had done it and he asked

12   me why and I explained and he watched for a few

13   minutes, he understood why I did it and that was

14   the extent of the conversation.

15   Q.  And that A frame board, where did you get

16   that board that you ultimately installed?

17   A.  I'm not sure who ordered that.

18   Q.  And is that how the Costco in Enfield

19   parking lot is operated to this day?

20   A.  The A frame boards are gone but we do have

21   three cones up there.

22   Q.  Okay.  Why did you get rid of the A frame

23   board?

24   A.  The wind, it kept getting blown over.

25   Q.  Okay.  So now are there cones blocking the

1  Costco that you had any concerns about the traffic

2  or pedestrian traffic in the parking lots next to

3  the Enfield Costco?

4      A.  No, not that I recall.

5      Q.  And other than sending you this letter had

6  anyone at Costco ever contacted you prior to 2022

7  to ask you about whether or not you had any

8  concerns about pedestrian traffic or vehicular

9  traffic in the Costco parking lot?

10     A.  No, not that I recall.

11     Q.  And putting aside this letter, at any point

12 in the course of this job, the ADA job in the

13 parking lot, did you have any conversations with

14 Mr. Stanfield?

15     A.  Before this job?

16     Q.  At any point in the course of this job, any

17 time after receiving this letter.

18     A.  I may have.  I may have.  I don't remember.

19     Q.  Was Mr. Stanfield ever on-site at the

20 Enfield Costco at any point either before this

21 project started or after this project started

22 relative to the ADA parking revision?

23     A.  I don't remember.

24     Q.  Putting aside Mr. Stanfield did you have any

25 contact with anyone else superior to you at Costco

1    A.  Correct.

2    Q.  And in terms of the placement of those cones

3    does Costco have any type of written material that

4    dictates where those cones should be placed?

5    A.  No.

6    Q.  And in terms of the -- your employees who

7    placed those, do you yourself provide them any

8    training about where to place them?

9    A.  I mean I've gone over it with them, you

10   know, making sure that everybody is feet apart

11   spaced evenly across the entrance.

12   Q.  At the time where you installed the A frame

13   sign and the cones in the travel lane itself, did

14   you review any written material prior to doing

15   that?

16   A.  No.

17   Q.  Did you consult with anyone either at the

18   town or at the owner of the plaza concerning your

19   decision to do that?

20   A.  No.

21   Q.  And in terms of the traffic detail that we

22   had talked about just going back to Exhibit C, I

23   think you indicated that during the holiday season

24   you will -- you have in the past utilized local law

25   enforcement to provide traffic detail to the plaza?

Page 82

1    Q.  I take it that because of that you yourself

2    personally have no knowledge as to what, if any,

3    standards Costco construction may refer to or look

4    at in determining what to do when making changes of

5    Costco parking lots, is that fair?

6    A.  I do not.

7    Q.  Okay.  You do not know, correct?

8    A.  I do not know what they go through to make

9    those changes, no.

10   Q.  Fair enough.  That's all the questions I

11   have.

12   A.  Okay.

13           MR. ESTY:  Thank you.  He's going to

14   read and sign and send it to me as well.

15           MR. NELLIGAN:  Regular delivery.

16           (Whereupon, the deposition was

17           concluded at 2:56 p.m.)

18

19

20

21

22

23

24

25

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


CIVIL ACTION NO: 3:24-cv-01102

_____x

NANCY LABROAD,

                              Plaintiff

                -vs-

COSTCO WHOLESALE CORP.

COSTCO WHOLESALE MEMBERSHIP, INC.,

                              Defendants

_____x


        Deposition of JASON LISEE of Defendant,

Costco Wholesale Corp., in the

hereinbefore-entitled action, taken by the

Plaintiff, pursuant to Notice before Michelle A.

Howell, a duly qualified Notary Public in and for

the State of Connecticut.  This deposition is being

held remotely on August 18, 2025, commencing at

10:40 a.m.


                DEL VECCHIO REPORTING

      STAMFORD          NEW HAVEN          HARTFORD

                    (203) 245-9583

1    deli department, you might have another one for the

2    fruit department?

3        A.   Yes, that's more of the department.  It

4    would be more like say as a front-end manager I'm

5    overseeing front-end membership, like anything a

6    member would touch that day, you know.

7        Q.   Okay.

8        A.   As whereas the AGM, it would be the

9    front-end meeting the merchandising that day,

10   possibly fresh, stuff like that.

11       Q.   Understood.  And in terms of the training

12   that you received to be an assistant general

13   manager, did you receive any training regarding

14   customer safety in exterior areas of Costco stores?

15       A.   None that I recall.

16       Q.   At any point throughout your career up until

17   the point where you received the promotion to

18   assistant manager had you ever received training

19   from Costco regarding customer safety in exterior

20   areas at Costco warehouses?

21       A.   None that I specifically recall.

22       Q.   What responsibility, if any, do assistant

23   general managers have with regard to customer

24   safety in exterior areas of Costco warehouses?

25       A.   We do periodic walks of the exterior of the

# EXHIBIT C

Page 1

1              UNITED STATES DISTRICT COURT
2                 DISTRICT OF CONNECTICUT
3
              CIVIL ACTION # 3:24-cv-01102
4
5
       ------------------------x
6                                :
   NANCY LABROAD,                :
7                                :
              Plaintiff,         :
8                                :
         -versus-               :
9                                :
   COSTCO WHOLESALE CORP.,       :
10   COSTCO WHOLESALE             :
   MEMBERSHIP, INC.,             :
11                                :
              Defendants.        :
12                                :
       ------------------------X
13
14
15          Deposition of BILL STANFIELD, taken
16   pursuant to the Federal Rules of Civil
17   Procedure, held remotely viz Zoom platform,
18   before Deborah L. Marotta, LSR #210, a Notary
19   Public in and for the State of Connecticut, on
20   Monday, December 8, 2025, at 1:30 PM.
21
22
23
24
25

Page 28

1   is something that's also going to the architect?

2   Or are you brought on board after the

3   architect's already sketched something out, and

4   you're going to start the permitting process

5   with a goal towards actually implementing the

6   project?

7       A.    Well, there's a predesign that's

8   already been done.  The predesign's already done

9   with our operations end of the company that has

10  already approved that concept to agree to do

11  it to a building, whatever it happens to be.

12          I get involved after there's

13  already an architect, after there's already a

14  budget, after there's already something being

15  drawn up for a permit.

16      Q.    All right.  And you referenced just a

17  moment ago predesign operations; is that a

18  separate part of the company that deals with --

19      A.    No.

20      Q.    -- projects?

21      A.    No.  It's just that operations works

22  with the architect to determine what exactly

23  they're going to approve or not approve to be

24  built.  And a lot of times -- well, it depends

25  on what's being built.  I mean, if you want it

Page 81

1     A.    No, I don't.

2         Q.    And in terms of the recommendations --

3    let me withdraw the question.

4              In terms of the work that was to

5    be performed at the Enfield warehouse in 2022,

6    it's your understanding that the work was

7    motivated by work done by the architect as well

8    as input from operations?

9         A.    No.   I -- I would have -- it's a

10   collaboration as I understand it between MG2,

11   Costco Legal, and Bohler Engineering, with some

12   influence by the City who had to permit it.

13        Q.    And as part of this job -- let me

14   withdraw the question.

15             As you sit here today, do you know

16   whether or not there were crosswalks installed

17   as part of the ADA Compliance work at the

18   Enfield warehouse?

19        A.    If there were some installed?

20        Q.    Yes.

21        A.    Or how many or whatever?

22        Q.    Did you have any input as to where

23   those crosswalks were installed?

24        A.    No, none.

25        Q.    All right.   And are you aware of anyone

1    involvement of operations strictly for just

2    knowing they're there and getting them off the

3    lot so they could open in the morning.  If they

4    had any real concerns, they would have called

5    MG2 or myself.

6        Q.    And who was the point person at MG2

7    overseeing this particular project in Enfield?

8        A.    I have no idea.  I have -- there could

9    have been one of two different people more than

10   likely.

11       Q.    Who were those two people?

12       A.    Either Ed Galloway or Alison McClellan.

13       Q.    And would it be fair to say that over

14   the last several years you've performed these

15   ADA Compliance projects with both Ed Galloway

16   and Alison McClellan?

17       A.    Yes.

18       Q.    And would you have periodic meetings

19   with either or both of them concerning the

20   status of ongoing ADA projects throughout the

21   country?

22       A.    Yes.

23       Q.    And did you have any formal schedule as

24   to when you would have those meetings?

25       A.    I think we did.  At some points, we